IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT WILEY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 15-5943 |
| UNIVERSAL UNDERWRITERS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

STENGEL, J.                                                                                                                                                                                                                   February 6, 2017

Bryant Wiley is the plaintiff and counterclaim defendant in this insurance dispute against defendant and counterclaim plaintiff Universal Underwriters Insurance Company. The parties have filed cross-motions for summary judgment on Universal's counterclaim, which seeks a declaratory judgment that Universal has no obligation to provide underinsured motorists benefits to Wiley in connection with the December 27, 2013 motor vehicle accident described in the complaint. Under the terms of the insurance policy at issue in this case, Wiley is not entitled to underinsured motorist benefits. Accordingly, Universal's motion for summary judgment is granted, and Wiley's motion for summary judgment is denied.

**I.     FACTUAL BACKGROUND**

On December 27, 2013, Wiley was operating a vehicle owned by his employer, CarSense, with CarSense's knowledge and permission. (Joint Stipulation of Facts ¶¶ 19–20.) CarSense had previously purchased an insurance policy with Universal, which included garage operations and property coverage, and which was in effect from July 1, 2013 to July 1, 2014.

(Id. ¶ 8.) While operating the vehicle, Wiley was allegedly injured by another vehicle driven by Michael Lenge. (Id. ¶ 21.) Wiley contends that Lenge was negligent in causing the accident, and was an underinsured motorist. (Id. ¶ 22.) Lenge's liability auto insurer tendered its policy limits to Wiley, who accepted the tender after seeking and receiving Universal's consent to do so. (Id. ¶¶ 23–24.) Universal provided its consent without prejudice to claim that there was no underinsured motorist ("UIM") coverage for Wiley under its policy. (Id. ¶ 24.) Wiley sought and collected Workers' Compensation benefits for the injuries he sustained in the accident. (Id. ¶ 25.) Wiley also sought UIM benefits from Universal, contending that the policy covering the car he was occupying was the first priority of recovery for UIM benefits. (Id. ¶ 26.) Universal denied coverage for UIM benefits. (Id. ¶ 27.)

The policy at issue in this case declared CarSense as the first Named Insured, while Francis McGowan and Marion McGowan, the principals of CarSense, are identified as Named Insureds Other Insureds. (Id. ¶¶ 6, 8.) Prior to the inception of the policy, CarSense received and executed Pennsylvania Important Notice form. (Id. ¶ 9.) CarSense was fully informed regarding the options for first party benefits under the policy, and made informed and knowing decisions regarding the election and rejection of first party benefits, including UIM coverage and uninsured motorist ("UM") coverage. (Id. ¶ 10.)

With respect to UIM coverage, CarSense intended to reject UIM benefits for all of its employees, and to secure $300,000 in UIM benefits for the McGowans only. (Id. ¶ 11.) To that end, CarSense executed the Pennsylvania Rejection of Underinsured Motorist Protection form on March 21, 2013, prior to the effective date of the policy. (Id. ¶ 12.) The Rejection form includes the exact text of 75 Pa. C.S. § 1731(c). (Id.) CarSense also executed a Pennsylvania

Underinsured Motorist Elective Options Form, expressly designating $300,000 of UIM coverage for the McGowans only, on March 21, 2013, prior to the effective date of the policy.[1] (Id. ¶ 13.)

The policy declarations at Item 3, Garage Operations and Auto Hazard Coverage, specified UIM coverage for the McGowans only, with limits of $300,000 per accident. (Id. ¶ 15.) The policy states that it insures "only those coverages shown in the declarations" and that the coverages in Item 3 "will not apply to any named insured, other insured, security interest or location unless its corresponding letter or number appears next to a specific coverage in Item 3." (Id.) The named insured "01" is CarSense and named insured "02" is the McGowans, and the other insureds are "AA" Francis and Marion McGowan. (Id.) In Item 3, only "AA" is listed for UM and UIM coverage. (Id.)

The policy includes Endorsement Number 91, related to UIM coverage, which states the following:

> **Underinsured motorist coverage applies only when Endorsement 91 is shown in the declarations**. In Item 2 of the declarations, each named insured and other insured is given a corresponding letter or number designation. **Insurance provided by Endorsement 091 will not apply to any named insured or other insured unless its corresponding letter or number appears next to a specific coverage in Item 3 of the declarations for Coverage Part 500 or Coverage Part 830**. When Endorsement 091 is shown in the declarations as applicable to more than one coverage part, the terms and conditions of this endorsement apply only to the coverage part that provides coverage for the MOTOR VEHICLE involved in an ACCIDENT.
>
> The General Conditions apply except as amended or replaced in this endorsement. The terms and conditions of this endorsement are separate and distinct from those of Coverage Parts 500—Garage and 830—Basic Auto.

---

[1] CarSense also executed the statutory forms to reject UM benefits for all of its employees under the policy, and to secure $300,000 in UM benefits as well as certain other first party benefits for the McGowans only. (Id. ¶ 14.)

(Id. ¶¶ 16–17 (emphasis added).)  Under the section "Who Is An Insured," Endorsement 91 states that:

> If YOU are designated in the declarations as:
>
> 1. an individual, then the following are insureds:
>
>    a. YOU and any FAMILY MEMBERS
>    b. anyone else OCCUPYING a covered MOTOR VEHICLE . . . .
>    c. anyone for damages he or she is entitled to recover because of BODILY INURY sustained by another INSURED.

(Joint Stipulation of Facts, Ex. F, Endorsement No. 091 PA.)

The policy also includes Endorsement Number 92, related to the designated individuals who receive UIM coverage.  Endorsement 92 reads as follows:

> **Who Is An Insured**
> **The following is added:**
> **With respect to uninsured and underinsured motorists coverage**:
>
> 1. **the individual** (and any "family member") **designated in the declarations as subject to this endorsement**; and
> 2. any passengers in a covered auto driven by the Designated Individual under Part 1 above.

(Joint Stipulation of Facts ¶ 18 (emphasis added).)

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); see also id. ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party."). The general rules applicable to a summary judgment motion do not apply any differently where there are cross-motions for summary judgment. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). "[T]he interpretation of an insurance contract is a question of law," and thus Universal's declaratory judgment claim is appropriate for summary judgment. 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 170 (Pa. 2005).

## III. DISCUSSION

After careful consideration of the parties' arguments, the evidence in the record, and the terms of the policy, I find that Wiley is not entitled to receive UIM benefits. I therefore find that Universal is entitled to summary judgment on its declaratory judgment counterclaim.

### A. Universal's Counterclaim for Declaratory Relief Regarding UIM Coverage

Under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1701 et seq., insurers are required to offer underinsured and uninsured motorist coverage, although the purchase of such coverage is optional. See 75 Pa. C.S. § 1731(a).[2] Courts applying Pennsylvania law have held that, in the case of a corporate named insured, the purchase of UIM coverage for employees is optional. See Freeth v. Zurich Am. Ins. Co., 152 F. Supp. 3d 420, 423 n.2 (E.D. Pa. 2015) ("Named insureds under commercial policies are permitted to make coverage elections that govern UM/UIM coverage for employees.") (citing Travelers Indem. Co. of Illinois v. DiBartolo, 171 F.3d 168, 172 (3d Cir. 1999) (predicting how the Pennsylvania Supreme Court would rule and concluding "that Pennsylvania allows a corporation to waive UM coverage when the corporation is the named insured.")), aff'd, 645 F. App'x 169 (3d Cir. 2016).

---

[2] 75 Pa. C.S. § 1731(a), "Mandatory Offering," provides that "No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional."

5

"'Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy.'" Gen. Refractories Co. v. First State Ins. Co., No. Civ.A. 04-3509, 2012 WL 947194, at *1 (E.D. Pa. Mar. 21, 2012) (quoting Heller v. Pa. League of Cities & Mun., 32 A.3d 1213, 1220 (Pa. 2011)). "'Whether ambiguity exists cannot be resolved in a vacuum, . . . but must instead be considered in reference to a specific set of facts.'" Gen. Refractories Co., 2012 WL 947194, at *1 (quoting Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978 (Pa. 2001) (additional citations omitted)).

Here, Universal asserts that CarSense properly rejected UIM coverage for its employees, and that the policy does not afford UIM coverage to Wiley for the injuries or damages he claimed to have suffered as a result of the motor vehicle accident described in the complaint. (Answer and Counterclaim ¶¶ 56–57.) Wiley sets forth two arguments in support of his claim that he is entitled to UIM benefits: first, that he is entitled to UIM benefits because he is not subject to the "exclusion" within the declarations, and that he is covered by the "Who is an insured" language in Endorsement 91 because he was "occupying" a covered vehicle when he was injured; and second, that the defendant's version of how the policy applies to these facts would frustrate the statutory scheme of the MVFRL and violate public policy. (See Pl.'s Resp. Opp'n to Def.'s Mot. Summ. J. 4–6; Pl.'s Mem. Supp. Mot. Summ. J. 7–10.) I will first address the parties' arguments regarding the correct reading of the policy as to UIM coverage, followed by Wiley's public policy arguments.

1. **The Policy Language**

As previously stated, CarSense purchased UM and UIM coverage for the McGowans only, and declined to purchase UM and UIM coverage for its employees. The UIM coverage rejection forms that Universal offered, and that CarSense completed and signed, contain the

statutorily required language.[3]  Despite the fact that CarSense rejected UIM coverage for anyone other than the McGowans, Wiley contends that he is nonetheless entitled to the UIM coverage benefits in the policy because of the wording of Endorsement 91.  But when the policy—including the declarations as well as Endorsements 91 and 92—is read in its entirety, it becomes clear that Wiley's argument is based on a selective reading of certain parts of the policy in isolation, and that he is not entitled to UIM benefits under CarSense's policy.

As stated above, Endorsement 91 provides that UIM coverage only applies to a named insured or other insured if they are specified in the declarations.  Only the named insureds "AA" are listed for UIM coverage in the declarations, which means that only the McGowans are named insureds for purposes of UIM coverage.  Wiley argues first that (1) because he is not a named insured or other insured, he is not excluded from coverage by the declarations, and (2) because the named insureds in the declarations are individuals, then he is an insured for UIM coverage because of part B.1.b. of Endorsement 91, which states that when the named insured is an individual, anyone occupying a covered vehicle is an insured.  (See Pl.'s Mem. Supp. Mot. Summ. J. 4–6.)

If the policy only included Endorsement 91, Wiley's interpretation of the policy might be more reasonable.  But Endorsement 92 for UIM coverage also applies, and states that "[w]ith respect to uninsured and underinsured motorists coverage," "who is an insured" means "the individual (and any 'family member') designated in the declarations as subject to this endorsement" and any passengers in a covered vehicle driven by the designated individual.  Thus, Endorsement 92 narrows the universe of UIM coverage to the McGowans or their passengers only, because the McGowans are the only individuals designated in the declarations

---

[3] Wiley does not argue that the rejection form is in any way invalid, but rather asserts that the signed rejection form "is of no moment" because, under his reading of the declarations page and policy language, the UIM coverage applies to him. (Pl.'s Mem. Supp. Mot. Summ. J. 4.)

7

for UIM coverage. Contrary to Wiley's argument, Endorsement 92 adds limitations on coverage, it does not expand it.

When the relevant portions of the policy are read together, it is clear that the policy's UIM coverage applies only to the McGowans. Having found that the terms of the policy are clear and unambiguous, I will next address Wiley's arguments that the policy's UIM provisions violate clearly expressed public policy.

### 2. **Wiley's Public Policy Arguments**

As discussed above, "[i]n construing a policy of insurance, a court must give plain meaning to the clear and unambiguous language of a contract provision, unless the provision violates a clearly expressed public policy." AAA Mid-Atl. Ins. Co. v. Ryan, 84 A.3d 626, 632–33 (Pa. 2014) (citing Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (1998)). "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." Id. at 633 (citing Eichelman, 711 A.2d at 1008). "Indeed, '[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].'" Id. The Pennsylvania Supreme Court has established "that whether public policy concerns justify invalidating an exclusionary clause in an insurance contract must be determined on the facts of each case." Nationwide Mut. Ins. Co. v. Riley, 352 F.3d 804, 807 (3d Cir. 2003) (citing Prudential Prop. & Cas. Ins. Co. v. Colbert, 813 A.2d 747, 752 (Pa. 2002)) (internal citation omitted)).

Wiley argues that Universal's attempt to limit UIM coverage to certain people, rather than to any occupant of a vehicle, is repugnant to the relevant Pennsylvania statutes. (See Pl.'s

Mem. Supp. Mot. Summ. J. 7.) Wiley further asserts that there is no provision of the MVFRL that permits insureds to obtain UIM coverage for designated individuals only, and a policy structured in such a way would render Section 1733 of the MVFRL a "nullity." (Id. at 8.) The Pennsylvania courts, however, have stated otherwise. In a case discussing various Pennsylvania Supreme Court cases finding that policies excluding named drivers were consistent with the public policy of the MVFRL, the Pennsylvania Superior Court recently held that "the provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." Byoung Suk An v. Victoria Fire & Cas. Co., 113 A.3d 1283, 1292 (Pa. Super. 2015), *appeal denied*, 130 A.3d 1285 (Pa. 2015).[4] In light of these precedents, Wiley's argument is not persuasive.

Wiley next argues that exclusion of UIM coverage for employees using company-owned vehicles is impermissible because it frustrates the statutory scheme of the MVFRL. (Pl.'s Mem. Supp. Mot. Summ. J. 9.) Wiley relies on Heller v. Pennsylvania League of Cities in support of his argument, but in doing so Wiley fails to consider the particular facts that were before the court in that case. In Heller, the court held that an employer's insurance policy that provided illusory coverage for employees was against public policy because the UIM coverage—which the employer had not rejected and for which it had paid premiums—would almost never apply because of a worker's compensation exclusion in the policy. See Heller v. Pennsylvania League of Cities & Municipalities, 32 A.3d 1213, 1223, 1228 (Pa. 2011). The facts of this case are distinct from those of Heller, because CarSense rejected UIM coverage for its employees, had

---

[4] When ascertaining Pennsylvania law to be applied in a diversity action, federal courts look first to the pronouncements of the Pennsylvania Supreme Court, but, if the Pennsylvania Supreme Court has yet to reach an issue, then federal courts look to the lower state courts. See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78–80 (1938)) (additional citations omitted).

not paid premiums for UIM coverage for its employees, and instead elected to purchase UIM coverage only for the two specific individuals named in the policy.  These differences, in addition to the Superior Court's holding in Byoung Suk An that named driver only policies do not violate public policy, wholly undermine Wiley's assertions that the way in which UIM coverage is structured in the policy is against public policy.

IV. **CONCLUSION**

In light of the foregoing, I find that the terms of the policy are unambiguous and dictate that Wiley is not entitled to UIM benefits, and that the manner in which the UIM coverage is structured in the policy does not violate public policy.  Accordingly, Wiley's motion for summary judgment is denied, Universal's motion for summary judgment is granted, and Universal is therefore entitled to a declaratory judgment on its counterclaim.

An appropriate Order follows.